UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROGERS NWABUE,

        Plaintiff,

    v.                                                   **DECISION AND ORDER**
                                                             10-CV-163S

SUNY AT BUFFALO/UNIVERSITY
MEDICAL SERVICES, JOHN YEH, M.D.,
ROSEANNE BERGER, M.D., and
JANE HARSZLAK, PH.D.

        Defendants.

        1.      *Pro se* Plaintiff, Rogers Nwabue, brings this action alleging that Defendant,

State University of New York at Buffalo Medical School ("UB"), discriminated against him

in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq.

("ADEA").[1,2] Presently before this Court is UB's Motion to Dismiss under Fed R. Civ. P.

12(b)(1). For the following reasons, that motion is granted.

        2.      Cognizant of the distinct disadvantage that *pro se* litigants face, this Court

has read Nwabue's submissions carefully and liberally, and has interpreted them to raise

the strongest arguments that they suggest. See Haines v. Kerner, 404 U.S. 519, 520, 92

S. Ct. 594, 30 L. Ed. 2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

---

[1]As required by the ADEA, Nwabue first lodged his complaint with the Equal Employment Opportunity Commission ("EEOC"). After conducting an investigation, the EEOC was unable to conclude that UB had violated the ADEA. It issued Nwabue's "Right to Sue" letter on November 27, 2008. (Docket No. 1.)

[2]Nwabue initially brought this action against the three additional defendants found in the caption, however, District Judge Richard J. Arcara, of New York's Western District, in an April 12, 2010 Decision and Order, dismissed the individual defendants from this action. (Decision and Order, Docket No. 3.) Further, Judge Arcara declined to exercise supplemental jurisdiction over Nwabue's state law claims against the individual defendants, leaving only the ADEA claim against UB. (Id.)

3.      Nwabue's claim arises out of his termination and perceived demotion as a medical school resident at UB in the Obstetrics and Gynecology Department in the years 2008 and 2009. (Facts of Complaint ("Compl."), ¶ 1; Docket No. 1.) Nwabue claims that UB unlawfully terminated him because of his age, claiming that "Defendant"[3] told him that his "age is the major factor mitigating against your coming to our program." (Compl., ¶ 6.)

4.      It appears that Nwabue's troubles began when UB sought to insert him into the "Post-Graduate Year 2" program, instead of the "Post-Graduate Year 3" program, for which Nwabue believed he was qualified due to prior education and work experience at a different institution. He alleges that although UB admitted him into the program, it did so reluctantly and only because he was the lone candidate. (Id.) As a result, according to Nwabue, UB made the program increasingly difficult for him to complete, putting barriers in the way of his advancement, including, *inter alia*, stealing records from his file (Compl., ¶ 16), performing FBI background checks (Compl., ¶ 2), cancelling speciality training sessions (Compl., ¶ 13), consistently disrupting his studies (Compl., ¶ 16), forcing him to work in excess of eighty hours per week (Compl., ¶ 10), and threatening termination (Compl., ¶ 17).

5.      Upset with these perceived discriminatory acts, he was instructed to take his complaints to Jane Harszlak, who apparently provides a type of supervisory function for UB. (Compl., ¶ 19.) Nwabue claims that Harszlak admitted that UB had committed "gross violations and discriminatory actions" but that she failed to act on this information. (Compl., ¶ 20.) Subsequently, Nwabue alleges that UB undertook various actions in retaliation for

---

[3]Nwabue uses the title "Defendant" indiscriminately throughout his complaint. It is unclear to whom he intends to refer.

his complaints to Harszlak. Nwabue alleges that Harszlak sent him an email disclosing UB's intention to terminate him (Compl., ¶ 22); thereafter he was placed on probation and eventually terminated after a hearing on the matter. (Compl., ¶¶ 22-27.) Nwabue alleges that the harassment and discrimination continued after his discharge: he claims that UB fraudulently withdrew funds from his HSBC bank account (Compl., ¶ 29), replaced certain medical achievements on Google with an advertisement for a criminal background check company (Compl., ¶ 30), and blocked his efforts at obtaining other employment in the medical field. (Compl., ¶ 31.)

6.     The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). UB argues that this Court lacks subject matter jurisdiction over Nwabue's claim because, as an entity of the state, it is protected from suit by the Eleventh Amendment, which provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

7.      It is well settled that the Eleventh Amendment bars suits against states and state agencies.  See Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 100-02, 104 S. Ct. 900, 908-909, 79 L. Ed. 2d 67 (1984); Jones v. New York State Div. of Military & Naval Affairs, 166 F.3d 45, 49 (2d Cir. 1999).  The Eleventh Amendment "renders an unconsenting state immune from lawsuits in federal court brought by that state's own

citizens or citizens of another state." <u>A.A. v. Bd. of Educ. of the Cent. Islip Union Free Sch. Dist.</u>, 196 F.Supp.2d 259, 264 (E.D.N.Y. 2002) (citing <u>Burnette v. Carothers</u>, 192 F.3d 52, 57 (2d Cir. 1999); <u>New York City Health & Hosp. Corp. v. Perales</u>, 51 F.3d 129, 134 (2d Cir. 1995)).  Further, it bars "courts from exercising jurisdiction over lawsuits against a state unless [the state] waive[s] sovereign immunity or Congress has expressly and validly abrogated that immunity." <u>A.A.</u>, 196 F. Supp. 2d at 264 (citing <u>Bd. of Trs. of Univ. of Ala. v. Garrett</u>, 531 U.S. 356, 363, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001); <u>Tuchman v. Connecticut</u>, 185 F. Supp.2d 169, 172 (D. Conn. 2002)).

8.     The Eleventh Amendment bars suits that seek either money damages, <u>see</u> <u>Edelman v. Jordan</u>, 415 U.S. 651, 663, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974) (recognizing that "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment"), or injunctive relief, <u>see</u> <u>Cory v. White</u>, 457 U.S. 85, 90-91, 102 S. Ct. 2325, 72 L. Ed. 2d 694 (1982) (holding that "the Eleventh Amendment by its terms clearly applies to a suit seeking an injunction").

9.     However, Nwabue, relying on 42 U.S.C. § 2000d-7, which is a provision of Title VI, argues that Congress explicitly abrogated the States' sovereign immunity for any state that chooses to accept federal financial assistance. Yet, Congress' authority to annul Eleventh Amendment immunity and permit suits under the ADEA was specifically addressed by the United States Supreme Court in <u>Kimel v. Fla. Bd.  of Regents</u>, 528 U.S. 62, 120 S. Ct. 631, 145 L. Ed. 2d 522 (2000). There, the Court held that the ADEA does not abrogate the States' sovereign immunity because Congress, seeking to permit such suits, exceeded its authority under Section 5 of the Fourteenth Amendment. <u>Id.</u>; <u>see also</u>

McGinty v. New York., 251 F.3d 84 (2d Cir. 2001) (applying <u>Kimel</u> and finding that sovereign immunity shielded the state of New York from a suit alleging  violations of the ADEA).

10.     Further, there is no question that UB is a legitimate arm of the state. The Second Circuit has held that for Eleventh Amendment purposes, the State University of New York ("SUNY") system, of which UB is a part, is an integral part of the state government such that when it is sued, the State of New York is the real party.  <u>Dube v. State Univ. of N.Y.</u>, 900 F.2d 587, 594 (2d Cir. 1990).   Moreover, the Second Circuit recognizes that "SUNY has clearly not consented to suit in a federal forum." <u>Id.</u>  Thus, this Court lacks subject matter jurisdiction over Nwabue's ADEA claim and no equitable or legal relief is available. <u>See</u> <u>McGinty</u>, 251 F.3d at 100 (finding that where it has been successfully demonstrated that a defendant is entitled to sovereign immunity under the Eleventh Amendment, federal courts lack subject matter jurisdiction over the case, and the case must be "stricken from the docket").

11.     Nwabue, in his memorandum of law (Docket No. 10), asserts that he is not only bringing an ADEA claim, but also a Title VII retaliation claim, which requires a different sovereign immunity analysis.[4]  Title VII does outlaw retaliatory actions in the employment setting, but its scope is limited to discrimination that is based on an individual's "race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a)(1); <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90, 123 S. Ct. 2148, 2150, 156 L. Ed. 2d 84 (2003).

12.     Section 704(a) sets forth Title VII's anti-retaliation provision in the following

---

[4]Nwabue checked only the ADEA box on his complaint form. (<u>See</u> Compl., p.1.)

terms:

> "It shall be an unlawful employment practice for an employer
> to discriminate against any of his employees or applicants for
> employment . . . because he has opposed any practice made
> an unlawful employment practice *by this subchapter*, or
> because he has made a charge, testified, assisted, or
> participated in any manner in an investigation, proceeding, or
> hearing *under this subchapter*."

§ 2000e–3(a) (emphasis added).

13.     Because discrimination based on age is not contemplated under Title VII, the sovereign immunity precepts outlined in Kimel (considering discrimination based on age) are applicable, not the sovereign immunity analysis under Title VII (considering discrimination based on race, color, religion, sex, or national origin). The material differences between age discrimination and the type of discrimination found in Title VII served as the foundation for the Supreme Court's finding that Congress can, under Section 5 of the Fourteenth Amendment, abrogate the States' sovereign immunity for the latter but not the former. *Compare* Kimel, 528 U.S. at 649-50 ("In light of . . . the lack of evidence of widespread and unconstitutional age discrimination by the States, we hold that the ADEA is not a valid exercise of Congress' power under § 5 of the Fourteenth Amendment. The ADEA's purported abrogation of the States' sovereign immunity is accordingly invalid") *with* Fitzpatrick v. Bitzer, 427 U.S. 445, 96 S. Ct. 2666, 49 L. Ed. 2d 614 (1976) (Section 5 of the Fourteenth Amendment authorizes Congress to abrogate States' sovereign immunity under Title VII).

14.     Further, Nwabue asserts no facts, even construed liberally, indicating that he was discriminated against on account of anything other than his age. Therefore, UB is entitled to sovereign immunity, this Court lacks subject matter jurisdiction, and UB's motion

to dismiss is accordingly granted.

IT HEREBY IS ORDERED, Defendant's Motion to Dismiss (Docket No. 4) is GRANTED.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.


Dated:   October 30, 2011
         Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
Chief Judge
United States District Court